IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Deborah D. Blocker, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:11-cv-00187-JFC |
| | ) | |
| v. | ) | Chief Judge Gary L. Lancaster |
| | ) | |
| Port Authority of Allegheny County, PA; | ) | ***Electronically Filed*** |
| and Willie J. Dillard, Tawnya Moore-McGee, Monica Johnson, Brenda Gacika, | ) | |
| David DeAngelis, Towanna Gatewood, | ) | |
| Rick Klavon, and Eric Wells, individually | ) | |
| and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER TO AMENDED COMPLAINT AND ADDITIONAL DEFENSES

AND NOW come Defendant Port Authority of Allegheny County ("Port Authority"), along with the following individual Defendants: (1) Willie Dillard ("Dillard"), Port Authority Detective; (2) Tawnya Moore-McGee ("Moore-McGee"), Assistant General Manager of Human Resources; (3) Monica Johnson ("Johnson"), Assistant to Director – Service Delivery; (4) Brenda Gazica (incorrectly named Brenda Gacika in Plaintiff's Amended Complaint) ("Gazica"), Employee Relations Representative; (5) David DeAngelis ("DeAngelis"), Assistant Manager of Maintenance and Service – East Liberty Garage; (6) Towana Gatewood (incorrectly named Towanna Gatewood in Plaintiff's Amended Complaint) ("Gatewood"), Director of Service Delivery – East Liberty Garage; (7) Rick Klavon ("Klavon"), Manager of Maintenance and Services – East Liberty Garage; and (8) Eric Wells ("Wells"), Assistant Director of Employee Relations and OEO (collectively referred to as "Defendants"), by and through their

undersigned counsel, and file this Answer to the Amended Complaint of Plaintiff Deborah

Blocker ("Blocker") and additional defenses to Blocker's claims.

## <u>INTRODUCTION</u>

Blocker's complaint revolves around the October 1, 2007 discovery of a black baby doll

with a handwritten racial epithet at the Port Authority's East Liberty Garage.  Although Blocker

was not scheduled to work that night, the majority of the workers at that location are African-

American, and the Director of Service Delivery for that location is an African-American female,

the doll was found in a common hallway, Blocker immediately assumed that the baby doll was

directed at her.  Remarkably, Blocker's friends, Robert Payne ("Payne") and Tamara Clark

("Clark") discovered the baby doll at 3:50 a.m.  Clark immediately took a picture of the doll and

texted it to Blocker.  Blocker then contacted various media outlets that morning and claimed that

she was the target of a racial hate crime.

The Port Authority took immediate action by having meetings that day with East Liberty

Garage employees, making clear such conduct would not be tolerated.  The Port Authority Police

and the FBI conducted a joint investigation.  Through that investigation, a signed statement was

obtained from Clark in which she admitted that: (1) Blocker had told her that a doll would be

hanging in the East Liberty Garage on October 1, 2007, and (2) Blocker had instructed Clark to

witness the doll so Clark took a picture of the doll and sent it to Blocker.  Blocker was

uncooperative throughout the investigation, and it turned out, had raised a similar incident as a

Union Board Person when working out of Port Authority's Collier Garage.  Based upon Clark's

statement, as well as other evidence gathered in the course of the investigation, the Port

Authority concluded that Blocker and Clark had provided false information to the Port Authority,

subjecting them to termination.

## ANSWER TO AMENDED COMPLAINT

The numbered paragraphs below correspond to the like-numbered paragraphs of the Amended Complaint.  Unless specifically admitted herein, each factual allegation in the Amended Complaint is denied.  The below answers are on behalf of all the Defendants unless otherwise indicated.

1.      It is admitted only that Blocker's Complaint purports to allege claims under 42 U.S.C. § 1981 of the Civil Rights Act ("Section 1981"), 42 U.S.C. § 1983 of the Civil Rights Act ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and intentional infliction of emotional distress.  The remaining averments contained in Paragraph 1 are denied.

2.      It is admitted that Blocker is an African-American female adult.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the averment that Blocker resides at the address identified in this Paragraph of her Complaint, and that averment is therefore denied.

3.      It is admitted that Port Authority is a public body corporate and politic, exercising the public powers of the Commonwealth as an agency thereof, pursuant to the Second Class County Port Authority Act, 55 P.S. § 553(a), as amended.  It is admitted that Port Authority maintains corporate offices at the Heinz 57 Building, 345 Sixth Avenue, 3rd Floor, Pittsburgh, PA 15222 and conducts business throughout Allegheny County, including Pittsburgh.  The remaining averments contained in Paragraph 3 are denied.

4.      It is admitted that Moore-McGee has, at all relevant times, been employed by the Port Authority as the Assistant General Manager of Human Resources.  It is denied that Moore-McGee supervises all employees at the East Liberty Garage.

5.      Admitted.

6.      Denied.  To the contrary, Johnson is the Assistant to Director – Service Delivery at the Port Authority.

7.      Denied.  To the contrary, Wells had been employed as the Acting Director – Employee Relations & OEO from June 2007 until July 2008 when he became the Assistant Director – Employee Relations & OEO at the Port Authority.

8.      Denied.  To the contrary, DeAngelis is the Assistant Manager of Maintenance and Service – East Liberty Garage.

9.      Denied.  To the contrary, Gatewood is the Director of Service Delivery – East Liberty Garage.

10.     Denied.  To the contrary, Klavon is the Manager of Maintenance and Service – East Liberty Garage.

11.     It is admitted that Gazica is an Employee Relations Representative and that Wells supervises her.  It is denied that Gazica is the Employee Relations Representative for only the East Liberty Garage.

12.     The averments in Paragraph 12 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

13.     The averments in Paragraph 13 are conclusions of law regarding jurisdiction to which no response is required.  To the extent a response is required, the averments are denied.

14.     It is admitted that Blocker filed three complaints with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") within 180 days and 300 days, respectively, of the complained-of acts.  The remaining averments

contained in Paragraph 14 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

15.     The averments in Paragraph 15 are conclusions of law regarding jurisdiction to which no response is required.  To the extent a response is required, the averments are denied.

16.     The averments in Paragraph 16 are conclusions of law regarding venue to which no response is required.  To the extent a response is required, the averments are denied.

17.     Denied.  To the contrary, Port Authority hired Blocker on April 17, 2000 as a Student Bus Operator at the Harmar Garage.

18.     Denied.  To the contrary, Blocker transferred from Bus Operations to the Bus Maintenance Department in 2002 into a Laborer X position.  In 2002, Port Authority merged the Laborer X position into the Service Person position.  In 2003, Blocker elected to move to a Service Person position at the Collier Garage by exercising her seniority under the collective bargaining agreement.  Blocker at some time became a Union Board Person for Amalgamated Transit Union Local 85 ("Union").

19.     Denied.  To the contrary, Blocker moved to a Service Person position at the Bus Maintenance Department at the East Liberty Garage in February 2006 by exercising her seniority under the collective bargaining agreement.

20.     Denied.

21.     Denied.

22.     It is admitted that David Swetoff ("Swetoff") and Donald Ivan (incorrectly named Donald Irving in Plaintiff's Amended Complaint) ("Ivan") are Caucasian men and Blocker's co-workers in the Maintenance Department at the East Liberty Garage.  It is admitted that Melvin Simonson ("Simonson") is an African-American male who works in the Maintenance

Department at East Liberty Garage.  It is admitted that Simonson complained about Swetoff in 2007.  By way of further answer, Port Authority conducted an investigation and counseled Swetoff.  The remaining averments contained in Paragraph 22 are denied.

23.      It is admitted that Carlos Ervin ("Ervin") is an African-American male employed by the Port Authority in the Maintenance Department at the East Liberty Garage and that Swetoff's car was vandalized.  It is admitted that Ervin filed an internal complaint against Swetoff and Ivan.  By way of further answer, George Monroe ("Monroe"), Port Authority's OEO Investigator, investigated the complaint, found that Swetoff and Ivan had used profanity in Ervin's presence, concluded that the conflict was due to performance issues and work assignments, and counseled Swetoff and Ivan to communicate with Ervin in a professional manner.  The remaining averments contained in Paragraph 23 are denied.

24.      It is admitted that Swetoff and Simonson had an argument in September 2007.  It is denied that the argument involved racially offensive comments.  To the contrary, Simonson's internal complaint, dated September 6, 2007, states that he and Swetoff argued about the distribution of overtime.  It is denied that a disciplinary hearing was scheduled on or about September 28, 2007 to address allegedly racially offensive comments by Swetoff and Ivan towards Simonson.  By way of further answer, Simonson's internal complaint alleged a conflict with only Swetoff.

25.      It is denied that Swetoff and Ivan received verbal counseling for alleged racially offensive comments in September 2007.  To the contrary, Swetoff and Ivan were counseled in March 2007.  By way of further answer, Monroe investigated Simonson's September 2007 complaint against Swetoff, found no evidence of racial animus, and met with Swetoff and

Simonson on December 3, 2007 to resolve accusations that each employee had alleged against the other.

26.     Denied.  To the contrary, Defendants are unaware of any evidence supporting Blocker's belief that the October 1, 2007 incident was directed towards her instead of by her.

27.     It is admitted that on October 1, 2007, around 3:50 a.m., Port Authority employees at the East Liberty Garage reported they found a black baby doll with the racial epithet "nigger bitch" written on it.  It is denied that the doll was hanging in front of Blocker's work area.  To the contrary, the doll was hanging in a hallway accessible and common to all employees and not far from an entrance close to the employee parking lot.

28.     Admitted.

29.     It is admitted that Clark is an employee in the Maintenance Department.  It is admitted that Clark notified Blocker about the doll that day.  By way of further answer, Clark texted a picture of the doll to Blocker and called her.  Port Authority lacks knowledge whether Payne called Blocker that day.  Therefore, that allegation is denied.

30.     It is admitted that to Port Authority's knowledge none of the managers and supervisors at East Liberty Garage called Blocker on October 1, 2007.  The remaining averments contained in Paragraph 30 are denied.

31.     It is admitted that Gatewood and Gazica knew that a doll had been hung at the East Liberty Garage.  The remaining averments contained in Paragraph 31 are denied.  By way of further answer, even if Blocker had called Gatewood and Gazica, there would have been no reason for either of those employees to return Blocker's calls to discuss the incident as there was no information at that time indicating the doll-hanging incident had any connection to Blocker.

32.     Denied.

33.     It is admitted that the Federal Bureau of Investigations ("FBI") was involved in the investigation.  It is denied that Port Authority turned over the doll to the FBI.  To the contrary, the doll has at all relevant times been in the custody of the Port Authority Police.

34.     It is admitted that in 2005 Blocker and Mary Stewart ("Stewart"), then Supervisor of Maintenance at the Collier Garage, reported during a disciplinary hearing for Stewart that a paper towel fashioned as a doll was allegedly found in Port Authority's Collier Garage in Stewart's work area in 2004.  It is denied that the doll was black.  To the contrary, the doll was constructed out of a paper towel.  The remaining averments contained in Paragraph 34 are denied.  By way of further answer, Stewart was scheduled to work at the East Liberty Garage on the night of October 1, 2007, but called off.

35.     Denied.

36.     It is admitted that Port Authority's Human Resources Department conducted an investigation after the FBI and Port Authority Police conducted an investigation.  The remaining averments contained in Paragraph 36 are denied.

37.     It is admitted that Port Authority Police and the FBI collected writing samples by Port Authority employees.  The remaining averments contained in Paragraph 37 are denied.

38.     It is admitted that Tom Schetley, Gary Novak and Tom Belan are Caucasian men employed by the Port Authority in the Maintenance Department and that those three employees were working the midnight shift at the East Liberty Garage on October 1, 2007.  The remaining averments contained in Paragraph 38 are denied.  To the contrary, Klavon, Gatewood and Gazica did not ask Port Authority employees for writing samples.  By way of further answer, Bob Dulski, Bill Bietler, David Swetoff, Don Ivan and Steve Massevic did not work the midnight shift on October 1, 2007.

39.     It is admitted that the Port Authority Police and the FBI asked Sharon Barry ("Barry") and Joan McKinley ("McKinley"), both African-American female employees, for writing samples.  It is denied that Barry and McKinley were not working at the East Liberty Garage on October 1, 2007.  To the contrary, both Barry and McKinley worked the midnight shift that night.  It is denied that Klavon, Gatewood and Gazica asked Barry and McKinley for writing samples.  It is denied that Blocker gave a writing sample to Dillard, Klavon, Gatewood or Gazica.  To the contrary, Blocker reluctantly gave a writing sample to Port Authority Detective David Rose on October 23, 2007.

40.     It is admitted that a handwriting analyst reviewed the handwriting on the doll and that the results were inconclusive.  The remaining averments contained in Paragraph 40 are denied.

41.     Denied.

42.     Denied.

43.     It is admitted that representatives from the National Association for the Advancement of Colored People ("NAACP") came to the East Liberty Garage in response to the doll-hanging incident.  The remaining averments contained in Paragraph 43 are denied.

44.     It is admitted that Moore-McGee, Klavon, Gatewood, Johnson and Gazica, who have no experience with fingerprinting, did not take fingerprints off the doll.

45.     It is admitted that the doll-hanging incident gained local media exposure.  The remaining averments contained in Paragraph 45 are denied.  By way of further answer, Blocker caused the doll-hanging incident to gain immediate media exposure.

46.     It is admitted that Blocker spoke to the news media on October 2, 2007 about the doll-hanging incident.  After reasonable investigation, Defendants lack knowledge or

9

information sufficient to form a belief as to the truth of the remaining averments in Paragraph 46, and, therefore, deny the same.

47.     It is admitted that Blocker spoke to the news media about the doll-hanging incident.  After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 47, and, therefore, deny the same.

48.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 48 and, therefore, deny the same.

49.     Denied.

50.     It is admitted that Bob Dulski (incorrectly named as Duluski in Plaintiff's Amended Complaint) ("Dulski") threw away several Port Authority mops.  The remaining averments contained in Paragraph 50 are denied.

51.     It is admitted that Blocker filed a complaint with the Port Authority, complaining about Dulski.  The remaining averments contained in Paragraph 51 are denied.

52.     Denied.  By way of further answer, Port Authority investigated Blocker's complaint about Dulski, found that Dulski was throwing away mops because he believed they were dirty and inoperable, and advised Dulski to stop throwing away mops.  Port Authority did not give Dulski a private cabinet for him to store his items.  Rather, Dulski requested to lock a cabinet filled with work supplies because supplies were disappearing, and Klavon granted Dulski permission to keep the cabinet locked.

53.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 53 and, therefore, deny the same.

54.     It is admitted that Blocker complained to Port Authority that employees were turning off lights in a hallway cleaned by Blocker.  By way of further answer, Port Authority responded to Blocker's complaint by removing the light switch and replacing it with a cover plate so that the on/off function could only be accessed from the power box.

55.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 55 and, therefore, deny the same.

56.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 56 and, therefore, deny the same.

57.     It is admitted that Blocker complained to Port Authority that Caucasian co-workers were allegedly staring at her when she would punch it at the beginning of her shift. After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the averment that Blocker complained to DeAngelis and Klavon and, therefore, deny the same.

58.     Denied.

59.     Denied.  To the contrary, Swetoff, Ivan and Dan Holzer (incorrectly named as Don Houser in Blocker's Complaint) witnessed an altercation between Gerald Davis and another employee, Dean Griffith, but were not involved.

60.     It is admitted that Port Authority Detective David Rose interviewed Blocker on October 19, 2007.  By way of further answer, approximately one week earlier, on October 10, 2007, Detective Dillard had requested to set up a meeting with Blocker to discuss the doll-hanging incident, but Blocker refused to speak to Dillard without a lawyer.  Dillard informed Blocker that his door was open if she wanted to speak to him with her lawyer.  Detective Rose later conducted an October 19, 2007 interview with Blocker and Port Authority employee Dwight Wright ("Wright").  Wright attended the interview at Blocker's request.  At the October 19 meeting, Detective Rose asked Blocker and Wright for writing samples.  Wright willingly submitted a writing sample, but Blocker refused to submit a writing sample without first speaking with her lawyer.  Blocker agreed to schedule another meeting with Detective Rose for October 23, 2007.  Blocker finally submitted a writing sample on that date.

61.     Admitted.

62.     It is admitted that FBI Agent Jackson and Detective Dillard interviewed Clark at the start of her shift on January 19, 2008 as part of their investigation and that Clark was without union representation during the interview.  The remaining averments contained in Paragraph 62 are denied.

63.     It is admitted that Detective Dillard was the Port Authority Detective assigned to investigate the doll-hanging incident.  The remaining averments contained in Paragraph 63 are denied.

64.     Denied.

65.     Denied.

66.     It is admitted that Clark signed a written statement stating, among other things, that Blocker knew the doll would be hung.  The remaining averments contained in Paragraph 66 are denied.

67.     It is admitted that Clark later recanted her written statement and claimed that she was coerced by FBI Agent Jackson and Detective Dillard.  The remaining averments contained in Paragraph 67 are denied.

68.     It is admitted that Blocker filed a charge of discrimination, alleging harassment and retaliation, against the Port Authority with the PHRC and EEOC on February 21, 2008, captioned at PHRC No. 200703631 and EEOC No. 17F200861264.  The remaining averments contained in Paragraph 68 are denied.

69.     It is admitted that Blocker alleged in her PHRC Complaint that her white male co-workers were intimidating and harassing her in retaliation for reporting the doll-hanging incident to the media.  It is admitted that Blocker alleged in her PHRC Complaint that her white male co-workers were not disciplined for their alleged retaliatory behavior.  It is admitted that Port Authority was served a copy of the complaint shortly after it was filed.

70.     It is admitted that FBI Agent Jackson and Detective Dillard attempted to interview Blocker on or around March 11, 2008.  The remaining averments contained in Paragraph 70 are denied.

71.     It is admitted that the FBI and Port Authority Police closed its investigation.  It is admitted that the FBI and Port Authority Police provided information from its investigatory file to Port Authority.  The remaining averments contained in Paragraph 71 are denied.

72.     It is admitted that, to date, criminal charges have not yet been filed.

73.     It is admitted that Klavon and Wells met with Blocker to inform her that she was being "held off" or administratively suspended with pay, pending the scheduling of a pre-disciplinary hearing for suspicion of misrepresentation/falsification.  The remaining averments contained in Paragraph 73 are denied.

74.     It is admitted that Port Authority management decided to administratively suspend Blocker with pay and that Wells was involved in the decision.

75.     Denied.

76.     It is admitted that when Wells notified Blocker she was being held off pending scheduling of a hearing, he did not identify the document that Blocker was accused of falsifying or the specific facts believed to be false.  The remaining averments contained in Paragraph 76 are denied.

77.     It is admitted that Wells notified Blocker she was being held off pending scheduling of a hearing.  The remaining averments contained in Paragraph 77 are denied.

78.     It is admitted that Port Authority administratively suspended Blocker and Clark with pay.  It is admitted that Blocker's paid suspension lasted fifteen months.  The remaining averments contained in Paragraph 78 are denied.

79.     Denied.

80.     It is admitted that Amalgamated Transit Union Local 85 is Blocker's union and Local 85 filed a grievance on her behalf after she was administratively suspended with pay.

81.     It is admitted that Blocker filed a charge of discrimination against the Port Authority with the PHRC and EEOC on May 27, 2008, captioned at PHRC No. 200705287 and EEOC No. 17F200862186.  The remaining averments contained in Paragraph 81 are denied.

82.     It is denied that the meeting on January 7, 2009 was a "hearing."  The remaining averments contained in Paragraph 82 are admitted.

83.     It is admitted that Blocker provided Port Authority with a statement that she did not know who hung the doll and that Port Authority concluded that the statement was false after Clark said that Blocker was responsible for the doll-hanging incident.  The remaining averments contained in Paragraph 83 are denied.

84.     It is admitted that Moore-McGee, Klavon, Gazica, and Gatewood had a second meeting with Blocker in February 2009 to discuss Blocker's false statement.  The remaining averments contained in Paragraph 84 are denied.

85.     It is admitted that Port Authority scheduled a Section 105 hearing prior to discharging Blocker.  By way of further answer, the Section 105 hearing was initially scheduled for and conducted on March 4, 2009.  It was continued on June 2, 2009.  It is admitted that Blocker was terminated on June 9, 2009.  The remaining averments contained in Paragraph 85 are denied.

86.     It is admitted that Moore-McGee made the decision to discharge Blocker.

87.     It is admitted that a grievance was filed by Blocker's union over her discharge on grounds that she did not have a fair and impartial hearing and discipline was issued without sufficient cause.  The remaining averments contained in Paragraph 87 are denied.

88.     It is admitted that Blocker filed a third charge of discrimination with the PHRC and EEOC, captioned at PHRC No. 200806477 and EEOC No. 17F200962656, alleging retaliation.  By way of further answer, it appears that Blocker mistakenly dated the verification of her third PHRC complaint July 15, 2008 instead of July 15, 2009.

89.     It is admitted that Blocker sent a letter to Daniel Onorato ("Onorato") requesting a meeting to discuss the doll-hanging incident and that, at all relevant times, Onorato was the Chief Executive Officer of Allegheny County.  After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the remaining averments contained in Paragraph 89 and, therefore, deny the same.

90.     It is admitted that Stephen Bland has, at all relevant times, been employed as the Chief Executive Officer of Port Authority.  The remaining averments contained in Paragraph 90 are denied.

91.     Admitted.

92.     Admitted.

93.     Denied.

94.     Denied.

95.     It is admitted that Blocker was eligible to apply for a Route Foreman position.  It is denied that Blocker would have received the position based on her seniority because the position is not awarded solely through bidding or exercising seniority under the collective bargaining agreement.  Defendants lack knowledge or information sufficient to form a belief as to whether Blocker would have applied for a Route Foreman position had she not been administratively suspended with pay and, therefore, deny the same.  By way of further answer, Port Authority posted two Route Foreman positions in 2007 while Blocker was still employed with Port Authority and prior to her suspension.  Blocker did not apply for either position.

96.     Denied.

97.     Admitted.

98.     It is admitted that the PHRC dismissed all of Blocker's cases of discrimination against the Port Authority on July 21, 2010.  It is denied that the PHRC dismissed Blocker's cases because of the arbitration decision reinstating Blocker to her former position.  To the contrary, the PHRC issued three letters to Blocker, each dated July 8, 2010, informing her that the PHRC was closing her complaints for other reasons.

99.     Admitted.

100.    Admitted.

101.    Denied.

102.    It is admitted that Blocker has reported harassment to Port Authority.  The remaining averments contained in Paragraph 102 are denied.

103.    Admitted.

104.    Denied.

105.    Denied.

## COUNT I
## PURPORTED RACE DISCRIMINATION CLAIM UNDER TITLE VII
### (Port Authority)

The below paragraphs are answered only on behalf of Port Authority.

106.    Port Authority hereby incorporates Paragraphs 1 through 105 of Defendants' Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

107.    Admitted.

108.    The averments in Paragraph 108 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  By way of further answer, it is denied that Port Authority or its agents, officers, manager/supervisors, employees or officials subjected Blocker to any actions complained of in the following sub-paragraphs:

(a)  Denied.

(b)  Denied.

(c)  Denied.

(d)  Denied.

(e)  Denied.

(f)  Denied.

(g)  Denied.

(h)  Denied.

(i)  Denied.

(j)  Denied.

109.    Denied.  By way of further answer, no similarly situated Caucasian employees were treated more favorably than Blocker.

110.    The averments in Paragraph 110 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

111.    The averments in Paragraph 111 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

112.    The averments in Paragraph 112 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  By way of further answer, Blocker has suffered no damages.

113.    The averments in Paragraph 113 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Furthermore, Port Authority is not subject to punitive damages as a matter of law.

114.     The averments in Paragraph 114 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Port Authority denies that Blocker is entitled to any damages.

## COUNT II
## PURPORTED RACE DISCRIMINATION CLAIM UNDER THE PHRA
**(Port Authority, Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood, Klavon)**

The below paragraphs are answered on behalf of Port Authority, Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood, and Klavon.

115.     Defendants hereby incorporate Paragraphs 1 through 114 of their Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

116.     Admitted.

117.     The averments in Paragraph 117 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  By way of further answer, it is denied that Defendants subjected Blocker to any actions complained of in the following sub-paragraphs:

    a.  Denied.

    b.  Denied.

    c.  Denied.

    d.  Denied.

    e.  Denied.

    f.  Denied.

    g.  Denied.

    h.  Denied.

    i.  Denied.

j.   Denied.

118.   Denied.  By way of further answer, no similarly situated Caucasian employees were treated more favorably than Blocker.

119.   It is denied that Defendants Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to take reasonable measures to prevent and promptly remedy the allegedly racially hostile environment.  The remaining averments in Paragraph 119 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

120.   It is admitted that Blocker was administratively suspended with pay and her employment terminated for legitimate, non-discriminatory reasons.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon incited and compelled discriminatory action against Blocker.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to properly investigate the doll-hanging incident.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon falsely accused Blocker of hanging the doll.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon falsely accused Blocker of writing a false statement.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to take reasonable measures to remedy the allegedly racially hostile work environment.

121.   Denied.  Defendants deny discriminating against Blocker.

122.   The averments in Paragraph 122 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  By way of further answer, Defendants did not violate the PHRA.

123.     The averments in Paragraph 123 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

124.     The averments in Paragraph 124 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Furthermore, Defendants are not subject to punitive damages as a matter of law.

125.     The averments in Paragraph 125 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Defendants deny that Blocker is entitled to any damages.

## COUNT III
## <u>PURPORTED HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII</u>
### (Port Authority)

The below paragraphs are answered only on behalf of Port Authority.

126.     Port Authority hereby incorporates Paragraphs 1 through 125 of Defendants' Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

127.     Admitted.

128.     The averments in Paragraph 128 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

129.     The averments in Paragraph 129 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  By way of further answer, Port Authority denies that it or its agents, officers, manager/supervisors, employees or officials engaged in any of the actions complained of in the following sub-paragraphs:

    a.  Denied.

    b.  Denied.

    c.  Denied.

      d.  Denied.

      e.  Denied.

      f.  Denied.

      g.  Denied.

      h.  Denied.

      i.  Denied.

      j.  Denied.

130.    The averments in Paragraph 130 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

131.    The averments in Paragraph 131 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

132.    The averments in Paragraph 132 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

133.    The averments in Paragraph 133 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

134.    The averments in Paragraph 134 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

135.    The averments in Paragraph 135 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Furthermore, Port Authority is not subject to punitive damages as a matter of law.

136.    The averments in Paragraph 136 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Port Authority denies that Blocker is entitled to any damages.

**COUNT IV**
**PURPORTED HOSTILE WORK ENVIRONMENT CLAIM UNDER THE PHRA**
**(Port Authority, Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood, Klavon)**

The below paragraphs are answered on behalf of Port Authority, Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood, and Klavon.

137.    Defendants hereby incorporate Paragraphs 1 through 136 of their Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

138.    Admitted.

139.    Denied.

140.    Denied.  By way of further answer, Defendants deny that they engaged in any of the actions complained of in the following sub-paragraphs:

      a.   Denied.

      b.   Denied.

      c.   Denied.

      d.   Denied.

      e.   Denied.

      f.   Denied.

      g.   Denied.

      h.   Denied.

      i.   Denied.

      j.   Denied.

141.    Denied.  It is denied that similarly situated Caucasian employees were treated more favorably than Blocker.

142.   It is denied that Defendants Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to take reasonable measure to prevent and promptly remedy the allegedly racially hostile environment.  Paragraph 142 contains conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

143.   It is admitted that Blocker was administratively suspended with pay and her employment terminated for legitimate, non-discriminatory reasons.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon incited and compelled discriminatory action against Blocker.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to properly investigate the doll-hanging incident.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon falsely accused Blocker of hanging the doll.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon falsely accused Blocker of writing a false statement.  It is denied that Defendants Dillard, Moore-McGee, Gazica, DeAngelis, Gatewood and Klavon failed to take reasonable measures to remedy the allegedly racially hostile work environment.  Paragraph 143 contains conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

144.   The averments in Paragraph 144 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

145.   The averments in Paragraph 145 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

146.   The averments in Paragraph 146 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Blocker is not entitled to any damages.

147.    The averments in Paragraph 147 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Furthermore, Defendants are not subject to punitive damages as a matter of law.

148.    The averments in Paragraph 148 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Blocker is not entitled to any damages.

### COUNT V
### PURPORTED CLAIM UNDER 42 U.S.C. § 1981
### (Dillard, Moore-McGee, Johnson, Wells, Gazica, DeAngelis, Gatewood, Klavon)

The below paragraphs are answered on behalf of Dillard, Moore-McGee, Johnson, Wells, Gazica, DeAngelis, Gatewood, and Klavon.

149.    Defendants hereby incorporate Paragraphs 1 through 148 of their Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

150.    Admitted.

151.    The averments in Paragraph 151 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

152.    The averments in Paragraph 152 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

153.    The averments in Paragraph 153 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

154.    The averments in Paragraph 154 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

155.    The averments in Paragraph 155 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

156.    The averments in Paragraph 156 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

157.    The averments in Paragraph 157 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Blocker is not entitled to any damages.

**COUNT VI**
**PURPORTED CLAIM UNDER 42 U.S.C. § 1983**
**(Dillard, Moore-McGee, Johnson, Wells, Gazica, DeAngelis, Gatewood, Klavon)**

The below paragraphs are answered on behalf of Dillard, Moore-McGee, Johnson, Wells, Gazica, DeAngelis, Gatewood, and Klavon.

158.    Defendants hereby incorporate Paragraphs 1 through 157 of their Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

159.    Denied.  By way of further answer, Defendants deny that they engaged in any of the actions complained of in the following sub-paragraphs:

  a.   Denied.

  b.   Denied.

  c.   Denied.

  d.   Denied.

  e.   Denied.

  f.   Denied.

  g.   Denied.

  h.   Denied.

  i.   Plaintiff failed to allege any facts in Paragraph 159(i) and therefore no response is required.

   j.   Denied.

160.    The averments in Paragraph 160 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

161.    The averments in Paragraph 161 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

162.    The averments in Paragraph 162 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

163.    The averments in Paragraph 163 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.  Moreover, Blocker is not entitled to any damages.

**COUNT VII**
**PURPORTED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**
**(Port Authority, Gatewood, Gazica, Johnson, Dillard, Moore-McGee, Wells, Klavon)**

The below paragraphs are answered on behalf of Port Authority, Gatewood, Gazica, Johnson, Dillard, Moore-McGee, Wells, and Klavon.

164.    Defendants hereby incorporate Paragraphs 1 through 163 of their Answer to Plaintiff's Amended Complaint as though the same were more fully set forth herein.

165.    It is denied that Defendants Gatewood, Gazica, Johnson, Dillard, Moore-McGee, Wells, and Klavon intended to cause, knew or should have known that the purported actions taken would result in serious emotional distress to Blocker.  Paragraph 165 contains conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

166.    Denied.  To the contrary, Defendants Gatewood, Gazica, Johnson, Dillard, Moore-McGee, Wells, and Klavon engaged in no extreme or outrageous conduct towards Blocker.

167.    The averments in Paragraph 167 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

168.    The averments in Paragraph 168 are conclusions of law to which no response is required.  To the extent a response is required, the averments are denied.

169.    Denied.  To the contrary, Blocker is not entitled to any relief.

## PRAYER FOR RELIEF

Plaintiff's prayer for relief does not constitute assertions of fact to which responses are required.  To the extent a response is deemed required, Defendants deny that Blocker is entitled to any relief or remedies.

## JURY DEMAND

Plaintiff's request for a jury trial does not constitute an assertion of fact to which a response is required.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert any an all applicable defenses to Blocker's claims. Defendants have not yet obtained all necessary discovery from Blocker or others in connection with this action, and therefore reserve the right to amend or otherwise supplement this pleading. Without limiting the generality of the foregoing and without regard to whether defenses set forth below are affirmative defenses within the meaning of Federal Rule of Civil Procedure 8(c), and without conceding that any such defenses must be set forth in its answer or assuming any burden of proof that it would not otherwise bear, Defendants state as follows:

28

1. Blocker cannot prove a *prima facie* case under any of her claims.

2. Defendants did not engage in any willful misconduct.

3. Defendants' actions with regard to Blocker were based upon reasonable factors and legitimate business reasons other than her race or any other unlawful discriminatory factors.

4. Blocker has incurred no losses entitling her to damages.

5. Blocker is not entitled to recover any damages against Defendants, including compensatory damages, punitive damages, attorney fees or costs.

6. Defendants did not engage in extreme or outrageous conduct that went beyond the bounds of decency.

7. Blocker cannot prove that she suffered severe emotional distress due to any actions by Defendants.

8. Port Authority and all its agents acting on its behalf are an agency and arm of the Commonwealth of Pennsylvania and are therefore not "persons" subject to liability under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

9. Plaintiff cannot recover punitive damages from Defendants because Defendants are immune from punitive damages.

10. Defendants are immune from state law claims under the doctrines of sovereign and/or governmental immunity.  Plaintiff's action is limited by the provisions of 42 Pa. C.S.A. § 8528.

11. Plaintiff's claims are preempted and/or otherwise barred, in whole or in part, by the Collective Bargaining Agreement entered into between the Union and Port Authority.

12.     Port Authority and all its agents acting on its behalf are not subject to this Court's jurisdiction pursuant to the protection from federal jurisdiction and judgments contained in the Eleventh Amendment of the United States Constitution.

13.     Defendants deny that Blocker has been damaged or harmed in any way, including, but not limited to, as a consequence of any alleged violation of state or federal law because Defendants deny that they have engaged in any violation of a provision of state or federal law governing their relationships with Blocker.

WHEREFORE, Defendants deny committing any violation of law with respect to Blocker's employment, and Defendants further deny that Blocker is entitled to any relief requested or otherwise.  Therefore, Defendants respectfully request judgment in their favor as follows:

(a)     That Plaintiff's Complaint against Defendants be dismissed with prejudice and that Blocker take nothing;

(b)     That Defendants be awarded their costs, disbursements and attorney fees, and expenses incurred herein;

(c)     That Defendants be awarded pre-judgment and post-judgment interest on their costs and attorney fees at the maximum rate allowed by law; and

(d)     That Defendants be awarded such other and further relief as the Court may deem proper.

Dated: May 5, 2011                          Respectfully submitted,

/s/Jaime S. Tuite
Jaime S. Tuite, Esquire (PA ID #87566)
Jaime.Tuite@bipc.com
Bethany C. Salvatore, Esquire (PA ID #206322)
Bethany.Salvatore@bipc.com
Emilie R. Hammerstein, Esquire (PA ID #307499)
Emilie.Hammerstein@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor

Pittsburgh, PA  15219-1410
(412) 562-8419/3997 & (412) 392-2173
(412) 562-1021 (fax)

Attorneys for Defendants